**BROWN KWON & LAM LLP**
William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAYMUNDO GONZALEZ, and<br>JOVANNY GARCIA,<br>*on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>- against -<br><br>ARTFARM FOOD INC, d/b/a MANUELA,<br>IWAN WIRTH and MANUELA WIRTH,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs RAYMUNDO GONZALEZ and JOVANNY GARCIA ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants ARTFARM FOOD INC, d/b/a Manuela (hereinafter, "Manuela" or "Corporate Defendant"), IWAN WIRTH ("I. WIRTH"), and MANUELA WIRTH ("M. WIRTH"), (collectively, "Individual Defendants" and together with Corporate Defendant, "Defendants") and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime wages due to off-the-clock work, (2) unlawfully retained gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 et seq. and Article 19 §§ 650 et seq., the supporting New York State Department of Labor Regulations, the New York City Earned Safe and Sick Time Act ("ESSTA"), and Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wages due to an improper tip credit, (2) unpaid regular and overtime wages due to off-the-clock work, (3) unlawfully retained gratuities, (4) uniform pay violations, (5) failure to provide paid safe and sick leave as required by the ESSTA, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4. This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

***Plaintiffs***

***Raymundo Gonzalez***

7. Plaintiff Raymundo Gonzalez is an adult who resides in Queens County, New York.

8. Plaintiff Raymundo Gonzalez is a covered employee within the meaning of the FLSA and NYLL.

9. Plaintiff Raymundo Gonzalez retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Jovanny Garcia***

10. Plaintiff Jovanny Garcia is an adult who resides in Hudson County, New Jersey.

11. Plaintiff Jovanny Garcia is a covered employee within the meaning of the FLSA and NYLL.

12. Plaintiff Jovanny Garcia retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendants***

***Artfarm Food Inc.***

13. Corporate Defendant Artfarm Food Inc. is a foreign business corporation organized under the laws of the State of Delaware with a principal place of business located at 130 Prince Street, New York, NY 10012 and an address for service of process located at 1209 Orange Street, Wilmington DE 19801.

14. Corporate Defendant Artfarm Food Inc. is the entity affiliated with Manuela, a restaurant located in the SoHo neighborhood of Manhattan.

15. At all relevant times, Defendants operated Manuela through Corporate Defendant.

16. At all relevant times, Corporate Defendant Artfarm Food Inc., had an annual dollar volume of sales in excess of $500,000.

17. Corporate Defendant Artfarm Food Inc., is a covered "employer" within the meaning of the FLSA and NYLL.

18. Corporate Defendant Artfarm Food Inc. employed Plaintiffs and similarly situated employees.

19. At all relevant times, Corporate Defendant Artfarm Food Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

20. At all relevant times, Corporate Defendant Artfarm Food Inc., applied the same employment policies, practices, and procedures to all non-exempt employees at Manuela.

***Iwan Wirth***

21. At all relevant times, Individual Defendant Iwan Wirth was an owner and principal of Manuela.

22. Individual Defendant Iwan Wirth is a covered "employer" within the meaning of the FLSA and NYLL.

23. Individual Defendant Iwan Wirth employed Plaintiffs and similarly situated employees.

24. At all relevant times, Individual Defendant Iwan Wirth had authority over personnel or payroll decisions and employment policies, practices, and procedures at Manuela.

25. At all relevant times, Individual Defendant Iwan Wirth had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at Manuela, including their work assignments, work schedules, pay and responsibilities.

26. At all relevant times, Individual Defendant Iwan Wirth had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Manuela.

27. At all relevant times, Individual Defendant Iwan Wirth had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at Manuela.

28. At all relevant times, Individual Defendant Iwan Wirth had the power to maintain employment records, including time and/or wage records of employees at Manuela.

***Manuela Wirth***

29. At all relevant times, Individual Defendant Manuela Wirth was an owner and principal of Manuela.

30. Individual Defendant Manuela Wirth is a covered "employer" within the meaning of the FLSA and NYLL.

31. Individual Defendant Manuela Wirth employed Plaintiffs and similarly situated employees.

32. At all relevant times, Individual Defendant Manuela Wirth had authority over personnel or payroll decisions and employment policies, practices, and procedures at Manuela.

33. At all relevant times, Individual Defendant Manuela Wirth had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and

conditions of their employment at Manuela, including their work assignments, work schedules, pay and responsibilities.

34. At all relevant times, Individual Defendant Manuela Wirth had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Manuela.

35. At all relevant times, Individual Defendant Manuela Wirth had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at Manuela.

36. At all relevant times, Individual Defendant Manuela Wirth had the power to maintain employment records, including time and/or wage records of employees at Manuela.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37. Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt, hourly employees employed at Manuela, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

38. At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for hours worked in excess of forty (40) per workweek and their policy of improperly retaining gratuities. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

39. All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

40. Defendants are aware or should have been aware that federal law required them to pay employees overtime wages for all of the hours they work and to refrain from improperly retaining gratuities.

41. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

42. Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt, hourly employees employed at Manuela, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members"). The Class includes a subclass consisting of tipped Class Members who had their tips improperly retained (the "Tipped Subclass").

43. Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

44. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also

determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

45. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

46. Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

47. Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages for off-the-clock work, (ii) failing to pay all due minimum wages, (iii) improperly retaining gratuities, in violation of the NYLL, (iv) failing to provide uniform maintenance pay, and (iv) failing to provide paid sick leave as required by the ESSTA. Plaintiffs and the Tipped Subclass were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, in violation of the NYLL.

48. Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

49. Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

50. Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

51. Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

52. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

53. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

54. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

55. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

56. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

a. Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

b. Whether Defendants paid Plaintiffs and Class Members at the lawful minimum wage rate;

c. Whether Defendants paid Plaintiffs and Class Members for all hours worked, including overtime hours;

d. Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and Class Members under the NYLL;

e. Whether Defendants provided proper notice to Plaintiffs and Class Members that Defendants were taking a tip credit;

f. Whether Defendants provided proper wage statements informing Plaintiffs and Class Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

g. Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiffs and Class Members;

h. Whether Defendants required Plaintiffs and Class Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

i. Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and Class Members;

j. Whether Defendants misappropriated tips from Plaintiffs and Class Members by keeping or distributing a portion of the tips to employees who are not entitled to receive tips under the NYLL;

k. Whether Defendants unlawfully deducted the wages of Plaintiffs and Class Members by requiring them to pay Defendants for cash register shortages or property loss;

l. Whether Defendants unlawfully required Plaintiffs and Class Members to purchase uniforms;

m. Whether Defendants failed to provide required uniform maintenance pay;

n. Whether Plaintiffs were eligible for paid sick leave under ESSTA;

o. Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

p. Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage statements with every payment of wages, as required by the NYLL

**<u>STATEMENT OF FACTS</u>**

57. Plaintiff Raymundo Gonzalez has been employed by Defendants as a Food Runner from in or around September 2024 through the present. Throughout his employment, Gonzalez was paid $11.00 per hour.

58. From the start of his employment until around April 2025, Gonzalez worked five days per week. Beginning in or around April 2025, his schedule was reduced to four days per week. Throughout his employment, Gonzalez typically worked from 3:45 p.m. until between 10:30 p.m. and 11:30 p.m. Prior to April 2025, Gonzalez also worked Saturday brunch shifts from approximately 9:00 a.m. to 4:00 p.m. Accordingly, prior to April 2025 Gonzalez worked between

approximately thirty (30) to thirty-five (35) hours per week, and after April 2025, he worked twenty-five (25) to twenty-eight (28) hours per week.

59. Plaintiff Jovanny Garcia has been employed by Defendants as a Barback and Busser from around September 2024 through the present. Throughout his employment Garcia was paid $11.00 per hour, except for two to five hours each week in which he is paid $16.50 for bar prep.

60. Throughout his employment, Garcia worked two days per week as a Busser and three days per week as a Barback. On weekdays, Garcia typically worked from approximately 3:45 p.m. until around midnight, and on weekends he worked as late as 1:00 a.m. or 2:00 a.m. In total, Garcia worked approximately thirty-eight (38) to forty-two (42) hours per week.

61. Throughout Plaintiffs' employment with Defendants, Plaintiffs and their tipped co-workers regularly observed discrepancies and irregularities in Defendants' tip records and in the amounts of tips distributed to employees. Plaintiffs frequently discovered that the tip amounts reported on tip records did not match the actual gratuities they received. When employees, including Plaintiffs, complained about these disparities, Defendants attributed them to "technical issues" with the POS system; however, no effort was made to reimburse Plaintiffs, FLSA Collective Members, or Class Members for the missing amounts. Following repeated complaints regarding unpaid tips and the above-described discrepancies, Defendants ceased providing employees with detailed tip reports altogether. Cash tips, and bar cash tips in particular, were routinely unaccounted for or went "missing," resulting in tipped employees being deprived of the full gratuities left by customers.

62. In addition, Defendants failed to pay any gratuities to tipped employees for the first one-and-a-half hours of each evening shift (approximately 4:00 p.m. to 5:30 p.m.) and for the first

two hours of each brunch shift (approximately 9:00 a.m. to 11:00 a.m.), despite taking a tip credit against those employees' wages for all hours worked.

63. Throughout their employment with Defendants, Plaintiffs regularly performed work off the clock for which they received no compensation. Plaintiffs typically arrived at Manuela around 3:45 p.m. to allow time to change into their uniforms before the 4:00 p.m. pre-shift meeting. However, they were not permitted to clock in until 4:00 p.m. From approximately 4:00 p.m. to 4:15 p.m./4:30 p.m., employees attended a mandatory pre-shift meeting. At around 4:30 p.m., Defendants required employees to clock out for a "thirty-minute meal break" and did not permit them to clock back in until 5:00 p.m. In reality, up until September 2025, Plaintiffs and other employees were unable to take a full meal break because they were required to perform significant pre-shift side work—such as setting up service stations, polishing glassware, and restocking supplies—during much of that period. Employees who clocked back in before 5:00 p.m. were reprimanded. Furthermore, even when Plaintiffs clocked in at the conclusion of their actual break, Defendants occasionally altered their time records manually to reduce the number of compensable hours. As a result, during this period Plaintiffs and their co-workers routinely worked approximately thirty to forty-five minutes per shift off the clock without pay. Beginning in or around September 2025, after receiving numerous complaints over an extended period regarding off-the-clock work, Defendants hired additional staff members to assist with pre-shift side work, and Plaintiffs were thereafter able to take a full thirty-minute meal break.

64. Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL.

65. Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiffs did not state their correct pay rate or tip credit rate. Further, the amounts of tips listed on the wage statements were different from the amounts Plaintiffs earned each week.

66. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members the lawful minimum wage due to an invalid tip credit deduction.

67. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Plaintiffs, FLSA Collective Members and Class Members did not receive proper notice that Defendants were claiming a tip credit.

68. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Plaintiffs, FLSA Collective Members and Class Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

69. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to provide proper wage statements informing Plaintiffs, FLSA Collective Members and Class Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs, FLSA Collective Members and Class Members failed to state the accurate amounts of tips earned by tipped employees.

70. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to accurately track daily tips earned by Plaintiffs, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

71. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Plaintiffs, FLSA Collective Members, and Class Members were required to perform more than two (2) hours and/or twenty percent (20%) of their workdays engaged in non-tipped "side work," including pre-shift side work, running side work, and post-shift side work.

72. As a Barback, Plaintiff Garcia was required to perform substantial pre-shift side work—approximately one and a half hours each day—including bringing ice and pre-mixed cocktails to the bar; arranging glassware, silverware, and napkins; laying down sawdust; retrieving and organizing canned beers, juices, and bottles of liquor; changing garbage cans; and organizing the liquor room. Plaintiff Garcia also performed significant side work during his shifts, such as applying sawdust, refilling juices, and placing silverware and glasses in the dishwasher. At the end of each shift, he spent an additional hour resetting the bar station, which included returning bottles and cans to the basement and taking out the garbage, among other similar duties. The above side-work is separate and apart from the work Plaintiff Garcia performs as a bar prepper, for which he receives $16.50 per hour. Plaintiff Garcia also performed extensive side work as a Busser, including cleaning and polishing glassware and silverware, arranging napkins and plates, and setting up and breaking down tables. In addition, Plaintiff Garcia was frequently required to work as a barista. During substantial portions of his employment, he prepared but did not serve coffee directly to customers; therefore, a tip credit should not have been taken against his wages for that work.

73. As a floor runner, Plaintiff Gonzalez was required to perform extensive non-tipped duties, including setting up chairs, restocking supplies, arranging silverware, placing chairs on tables, supplying service points, bringing plates, glasses, and silverware to and from the dishwasher, and returning materials to storage at the end of each shift. With respect to restocking,

Plaintiff Gonzalez was responsible for all five stations—including the pantry, raw bar, 2 grill stations, and pastry stations—a task that alone required approximately one and a half to two hours each day. In addition, throughout his shifts, Gonzalez was required to restock the shelves behind the kitchen and clean the line by scrubbing surfaces to remove spills and grease. Plaintiff Gonzalez was also responsible for wiping all plates before they were placed on tables. Plaintiff spent a significant portion of each workday performing these cleaning and maintenance duties.

74. At all relevant times, Defendants required Plaintiffs and Class Members to wear and maintain designated uniforms while working. Defendants provided employees with two pairs of pants, three shirts and only one apron. Due to the nature of the work, these uniforms required frequent laundering—often by dry cleaning—to remain presentable. Defendants did not provide uniform maintenance pay or reimburse employees for cleaning expenses. The limited number of uniforms supplied was insufficient for the number of shifts employees worked each week, requiring Plaintiffs to clean their uniforms multiple times between shifts at their own expense.

75. Throughout their employment with Defendants, Plaintiffs and Class Members were not provided with paid sick leave as required by the New York City Earned Safe and Sick Time Act ("ESSTA"). Defendants failed to accrue and credit paid sick time to Plaintiffs and Class Members, failed to permit the use of such leave for qualifying absences, and failed to provide notice of employees' rights to paid safe and sick time. As a result, Plaintiffs and Class Members were unlawfully denied paid sick leave benefits to which they were entitled under the ESSTA.

76. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members their full wages for off-the-clock work.

77. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to provide proper wage notices to Plaintiffs and Class Members. The wage notices that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate.

78. Based on Plaintiffs' observations and conversations with co-workers at Manuela, Defendants failed to provide proper wage statements to Plaintiffs and Class Members. The wage statements that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate, and failed to state other required information. In addition, the wage statements that were provided to Plaintiffs and Class Members failed to reflect the accurate amounts of tips they earned each week.

79. Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

80. Defendants knowingly and willfully operated their business with a policy of failing to pay the full amount of wages for off-the-clock work to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

81. Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs, FLSA Collective Members and Class Members earned from customers and/or allowing a portion of the tips to be misappropriated by managers, supervisors or other employees who are not entitled to receive tips under the FLSA and NYLL.

82. Defendants knowingly and willfully operated their business with a policy of failing to pay uniform maintenance pay to Plaintiffs and Class Members.

83. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

84. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
***Violations of the Fair Labor Standards Act***
***(Plaintiffs and FLSA Collective Members)***

85. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

86. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

87. Defendants failed to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for all hours worked in excess of forty (40) per workweek, in violation of the FLSA.

88. Defendants failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

89. Defendants failed to pay wages to Plaintiffs and FLSA Collective Members by time-shaving the hours worked by employees, in violation of the FLSA.

90. Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiff and tipped FLSA Collective Members earned from customers in violation of subsection 203(m) of the FLSA. See, 29 C.F.R. § 531.52.

91. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

92. Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

93. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

94. As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

95. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
***Violations of the New York Labor Law***
***(Plaintiffs and the Class)***

96. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

97. At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

98. Defendants failed to pay full and proper wages, including overtime wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

99. Defendants failed to pay full and proper wages, including overtime wages to Plaintiffs and Class Members by time-shaving the hours worked by employees, in violation of the NYLL.

100. Defendants failed to pay Plaintiffs and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

101. Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs and the Class the full minimum wage at a rate of $15.00 per hour for all hours worked from December 31, 2018 through December 30, 2023; and $16.00 per hour for all hours worked from December 31, 2023 to the present.

102. Defendants have failed to notify Plaintiffs and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

103. Defendants required Plaintiffs and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

104. Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiff and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

105. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

106. At all times, Defendants required Plaintiffs and the Class to wear a uniform for each work shift as a condition of their employment.

107. At all relevant times, Defendants did not maintain required uniforms on behalf of Plaintiffs and the Class pursuant to the NYLL. At all times, Defendants failed to compensate Plaintiffs and the Class with their uniform maintenance pay, in violation of the NYLL. Pursuant to the NYLL, the supporting New York State Department of Labor Regulations, the New York Hospitality Industry Wage Order, 12 N.Y.C.R.R., Part 146, Defendants are required to pay Plaintiffs and the Class a uniform maintenance pay as they were not provided with a sufficient number of uniforms consistent with the average number of days worked per week.

108. At all times, Defendants did not launder or offer to launder Plaintiffs' or the Class' required uniforms, did not ensure the availability of an adequate supply of clean, properly-fitting uniforms, and did not inform Plaintiffs and the Class of such a service in writing.

109. Plaintiffs and the Class spent time off-the-clock and money to regularly clean and maintain their uniforms consistent with the uniform appearance standards required by Defendant.

110. Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether

paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

111. Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

112. Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

113. As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages for off-the-clock work, unpaid wages due to time-shaving, unpaid spread-of-hours premium, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**THIRD CAUSE OF ACTION**
***Violation of the New York City Earned Safe and Sick Time Act***
***(Plaintiffs and the Class)***

114. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

115. At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the New York City Earned Safe and Sick Time Act ("ESSTA"), N.Y.C. Admin. Code §§ 20-911 et seq.

116. Defendants failed to provide Plaintiffs and Class Members with paid safe and sick leave as required by the ESSTA, including by failing to accrue and credit the required hours of paid leave, failing to permit the use of such leave for qualifying absences, and failing to provide notice of employees' rights under the ESSTA.

117. Defendants also failed to maintain and preserve adequate records of safe and sick leave accrual and use, as required by the ESSTA and applicable regulations.

118. As a result of Defendants' violations of the ESSTA, Plaintiffs and the Class have been deprived of paid sick leave benefits and other rights guaranteed under the Act and are entitled to recover from Defendants: (1) the value of unpaid safe and sick leave; (2) an additional equal amount as liquidated damages; (3) statutory penalties; (4) reasonable attorneys' fees and costs; and (5) such other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d. An award of unpaid overtime wages due under the FLSA and NYLL;

e. An award of unpaid minimum wages due under the NYLL;

f. An award of unlawfully retained tips due under the FLSA and NYLL;

g. An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the FLSA or NYLL;

h. An award of unpaid uniform maintenance pay due under the NYLL;

i. An award equal to the value of all unpaid safe and sick leave that should have been accrued and credited to Plaintiffs and Class Members;

j. An award of liquidated damages pursuant to ESSTA;

k. Pre-judgment and post-judgment interest;

l. Reasonable attorneys' fees and costs of this action;

m. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

n. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

o. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: November 22, 2025

Respectfully submitted,

**BROWN, KWON & LAM LLP**

By: *_/s/ William Brown__________*

William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*